UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

LARRI CHISOLM and JOHNELL SHARROCK,

                Plaintiffs,

        -against -

LIBERTY LINES TRANSIT INC.,

                Defendant.

------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 2/6/13

**DECISION AND ORDER**

08 Civ. 7894 (GAY)

## I. Background

    Plaintiffs Larri Chisolm and Johnell Sharrock brought this action against Liberty Lines Transit Inc. ("Liberty") alleging that said company failed to hire them in January 2008 in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law, Executive Law § 290 et seq. ("NYHRL").  Trial commenced on July 25, 2011 and on July 29th a jury returned a verdict in favor of plaintiffs awarding both of them $7,000 in compensatory damages and $5,000 each in punitive damages. The issue of economic damages is to be decided by this Court.

    Liberty moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 following the close of the plaintiff's case in chief and again following the close of all the evidence. The Court reserved on said motions and submitted the case to the jury.  Liberty now moves for judgment as a matter of law as to both the liability and punitive damage awards and, in the alternative, for a new trial or amended judgment pursuant to Rule 59.

    For the reasons that follow, the motions are denied.

## II. **Standard of Review**

"Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998). In making this determination, the court must defer "to all credibility determinations made by the jury and to all reasonable inferences from the evidence that the jury might have drawn in favor of the nonmoving party." Vasbinder v. Ambach, 926 F.2d 1333, 1339 (2d Cir. 1991). Judgment as a matter of law should not be granted unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994). In sum, "a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000) (internal quotation and citation omitted).

A court may grant a new trial pursuant to FRCP 59 "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted." Fed. R. Civ. Proc. 59(a). Generally, a new trial may be warranted if "the verdict is against the weight of the evidence, damages are excessive, the verdict is inconsistent, substantial errors were made in admitting or excluding evidence, or in

charging the jury, or because a material issue was improperly submitted or withdrawn from a jury." Dewitt v. New York State Housing Finance Agency, No. 97 Civ. 4651, 1999 WL 672560, at *1 (Aug. 26, 1999) (internal quotation and citation omitted). Rule 59's threshold for granting a new trial is lower than Rule 50's threshold for granting judgment as a matter of law because the trial judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner. United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998) (internal quotation and citation omitted). Thus, "a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict. Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000). However, the trial court "ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Hygh v. Jacobs, 961 F.2d 359, 365 (2d Cir. 1992) (internal quotation omitted).

III. **DISCUSSION**

A. The Rule 50 and 59 Motions

Defendant Liberty asserts that there was no legally sufficient basis for a reasonable jury to find for plaintiffs on their "sex-plus" discrimination claim and award punitive damages. Liberty argues, *inter alia*, that plaintiffs did not establish at trial that they were denied positions as bus operators under circumstances giving rise to an inference of "sex plus" discrimination; that the hiring statistics that were admitted into evidence at the trial does not reveal any discrimination; that plaintiffs did not prove that they were

3

qualified for a position as a bus driver or rebut Liberty's legitimate business reasons for not hiring them; and that the proof against Liberty did not establish malice or recklessness required for a punitive damages award.  Liberty also states that plaintiffs' untruthful and/or perjured trial testimony justifies, at least, vacating the punitive damages awards.

Plaintiffs, on the other hand, contend that the trial evidence was more than sufficient to permit a reasonable jury to find in plaintiffs' favor as they did.  Plaintiffs also state that Liberty has improperly raised in this post-verdict motion the issue for the first time that plaintiffs' were not qualified for bus operator positions.   They also assert that there is no evidence of perjury or untruthfulness by the plaintiffs on this trial record that would justify granting any relief to Liberty.  Plaintiffs also urges the Court to disregard an affidavit of a Liberty employee that was submitted with the Rule 50 motion herein.

Plaintiffs contend that Liberty failed to hire them as bus operators because they are African-American females.  Such "sex 'plus" claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting framework set forth in McDonnell-Douglas Corp v. Green, 411 U.S. 782, 802-03 (1973); Blitzer v. Potter, No. 03 Civ. 6124, 2005 WL 1107064 at *9 (S.D.N.Y. May 6, 2005).  A plaintiff must first satisfy the minimal burden of making out a *prima facie* case of discrimination by showing that "(1) he is a member of a protected class, (2) he was qualified for the position he held, "(3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. Cnty. of Rockland. 609 F.3d 486, 492 (2d Cir. 2010).

4

A plaintiff's burden in presenting *prima facie* evidence is *de minimis*.  Abud-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 467 (2d Cir.), cert denied, 534 U.S. 993 (2001). Liberty contends, however,  that plaintiffs did not prove that they were qualified for the position of bus driver.  A party may request post-verdict  judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) only if they sought such relief before the jury retired. Provost v. City of Newburgh, 262, F.3d 146, 161 (2d Cir. 2001).  The scope of the later motion is limited to those grounds specifically raised in the prior Rule 50 motion during the trial. Id.  (citation and quotations omitted); McCardle v. Haddad, 131 F.3d 43, 51 (2d Cir. 1997)("In sum a posttrial motion for judgment as a matter of law can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury.").  A review of the record shows that Liberty did not make their trial motions for judgment as matter of law on the specific grounds that plaintiffs were not qualified for the position.  Trial Tr. 494-98, 579. Accordingly, Liberty cannot now move post-verdict pursuant to Rule 50(b) on said grounds.

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for employee's dismissal.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for employment action.  Id. at 253.

Here, plaintiffs seek to establish an inference of discriminatory intent under a

"disparate treatment" theory. (Tr. at 12)[1]  "A showing of disparate treatment - that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' - is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case."  Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)(quoting Graham v. Long Island R.R, 230 F.3d 34, 39 (2d Cir. 2000).  To raise an inference of discrimination by showing disparate treatment "the plaintiff must show [ ] he was 'similarly situated in all material respects' to the individuals with whom [ ] he seeks to compare h[im]self."  Graham, 230 F.3d at 39 (quoting Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997).

Plaintiffs contended at trial that the discriminatory action taken against them was the refusal of Liberty to hire them as a result of their December 2007 application  because they were African-American women.  Four applicants, Brent Straley, Denise Bess-Boyd, Walter Walker and Thomas O'Reilly, were chosen for the January 28, 2008 bus operator training class from the June to December applications.  (Ex. 8, #038).  Said applications included at least seventeen (17) African-American females including the plaintiffs.  (Ex. 7).

Zeneck Procek. Executive Director of Operations at Liberty, was responsible for interviewing job applicants for bus operator or van operator positions during the years 2000 through 2007.  (Tr. 231).  Procek would determine who would get a first interview, conduct those interviews and determine whether the applicant would get a second

---

[1]"Tr." refers to the pages of the trial transcript.

interview. (Tr. 232-33). He looked for a clean commercial driving license ("CDL"),
driving for three years or more and a stable work history in his initial evaluation. (Tr.
236). Procek would not consider anyone who did not have a CDL. (Tr. 236-37). It was
possible for applicants who had gaps in employment of more than two or three years to
be interviewed. (Tr. 239). The Court finds that the evidence before the jury was
sufficient for them to conclude that Sharrock and Chisolm met said criteria to be hired
as bus operators. Plaintiff Sharrock's application was denied because she did not list all
of her work history. (Tr. 266). Procak also noted inconsistent information that he
received from Chisolm during her various interviews as the reason for her not being
hired. (Ex. 1; 14 (at Bates p. 374); and 15 (at Bates p. 397).

Before the jury was testimony and evidence of how Liberty treated the plaintiffs
during their interviews and application process (Tr. 177-81, 257-266, 273-282, 392-393,
444-445, 448-45-, 451-452, 483-484), contrasted to the treatment and hiring of others
outside the class of African-American females who were hired (Ex. 9, Tr. 309-347, 348-
360, 393, 545-547m 549-550m 550-554, 555-556). For example, Brent Straley, a
Caucasian male, applied in June 2007 and was hired in December 2007. (Ex. 9-M,
1582-1587). Procak indicated that Straley was unprepared for his interview, did not
know his work history related to his application, had little to no experience with vehicles
larger than a U-Haul truck, had little or no knowledge of Westchester, and only listed
dates for jobs for one year prior to his application. Walter Walker, an African American
male, applied in October 2007 and was hired to start in January 2008. (Ex. 9-N, 2627-
2638). Procak noted that Walker "needs experience" when he interviewed him in

December 2007.  (Tr. 354-356).  Walker's employment history did not demonstrate
stability.

Moreover, the trial record also included statistical evidence of Liberty's hiring record
in the years prior to plaintiffs' 2007 employment applications.  Said evidence showed
the limited number of African-American females hired as bus operators in the years
preceding 2008.  (Ex. 10, 11).  For example, an analysis of Ex. 17 shows that in 2004
fifty-four (54) African-American females applied for bus operator positions and two (2)
were hired;  forty-five (45) Hispanic females applied and six (6) were hired;  and seven
(7) Caucasian females applied and none were hired.  In 2005, fifty-two (52) African-
American females applied and none were hired; fifty-four (54) Hispanic females applied
and eleven (11) were hired; and nine (9) Caucasian females applied and two (2) were
hired.  (Ex.17; Pls. Memo. of Law in Opp. To Defts. Mot. For Judgment at 16).

Liberty did hire Desiree Bess-Boyd, an African American female, who also started in
January 2008.  However, the jury had before it evidence sufficient to demonstrate
disparate treatment.  The jury was also able to assess the credibility of the plaintiffs and
the witnesses from Liberty as to their stated reasons for the hiring decisions.  The Court
concludes that there was sufficient evidence to support the verdicts of the jury.
Accordingly, the motion of Liberty for judgment as a matter of law pursuant to Rule 50 is
denied.  This Court also concludes that the verdict was not a "seriously erroneous
result" or a "miscarriage of justice."  Hygh v. Jacobs, 961 F.2d at 365.  The Court also
finds that the verdict was not against the weight of the evidence that was before the
jury.  As such, the motion for a new trial pursuant to Rule 59 is also denied.

B.  Jury Instructions

Liberty argues that it is entitled to judgment as a matter of law because the Court refused to give a jury instruction that included language used by District Judge Kenneth M. Karas in his decision on summary judgment.  Liberty proposed that the Court instruct the jury as follows: "While the fact that Liberty Lines hired other African-American females during the same time period does not prevent plaintiffs from bringing this lawsuit, it does pose a significant hurdle that plaintiff must overcome." (Tr. 592).  The Court declined to give the requested charge and stated: "I read what Judge Karas said on summary judgment.  However, there is a lot of language in summary judgment that's not appropriate for jury instructions.  I believe this is one of them.  You can make your arguments to the jury concerning what you just said, you know, that other African-American females were hired."

The Court adheres to its ruling at the jury charge conference that the use of such language in a summary judgment decision does not require its use in the jury instructions to be given.  The jury instructions that were given were correct statements of the law.  The Court's refusal to give the requested language does not warrant the granting of the motion or justify a new trial.

C.  Punitive Damages

The jury awarded each plaintiff the amount of $5,000 in punitive damages on their "sex-plus" claims herein.  Liberty contends that it is entitled to judgment as a matter of law or a new trial on said punitive damages awards.  Liberty argues that the evidence

9

did not establish that it acted with malice or reckless disregard of the rights of the plaintiffs. Liberty further alleges that untruthful testimony by the plaintiffs justifies vacating the award of punitive damages. Plaintiffs, on the other hand, assert that the evidence at trial was sufficient to show that Liberty acted with reckless disregard of their rights.

Punitive damages in a Title VII case are available where the evidence demonstrates that "the employer has 'engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 384 (2d Cir. 2001)(quotation omitted). Here, the trial evidence entitled the jury to find that Liberty intentionally discriminated against the plaintiff well knowing that others outside the class of African American females were being hired with the same issues that were the stated reasons for not hiring plaintiffs. As advanced by plaintiffs, there was statistical evidence concerning the "sex plus" claims that entitled the jury to conclude that such discrimination was long standing. Also, it is clear that the jury did not credit Liberty's stated reasons for not hiring plaintiffs. As such, the evidence was sufficient to show reckless indifference by Liberty to the plaintiffs' protected rights. The jury was entitled to determine whether or not plaintiffs were intentionally untruthful in their testimony. The Court declines to consider the affidavit of Tania Williams submitted with the motions herein who was available to be called as a trial witness.

Accordingly, the motions concerning the punitive damages awards are denied.

IV. **Economic Damages**

Upon the motion of defendant, it was ordered that the equitable damages remedies under Title VII would be decided by the Court if the jury found liability against Liberty. Plaintiffs now seek damages for back pay, lost benefits and front pay in lieu of their being hired as bus operators with Liberty.  After the jury returned a verdict in favor of the plaintiffs, the Court requested post-trial briefs regarding the calculation of damages.

A plaintiff prevailing in a Title VII action may be entitled to "back pay" and "front pay" Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 157 (2d Cir. 2001), cert. denied, 535 U.S. 951 (2002).  "The purpose of back pay is to completely redress the economic injury the plaintiff has suffered as a result of discrimination."  Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994)(internal quotations and citations omitted).  An award of back pay may include lost wages, anticipated raises and fringe benefits.  Id.  A "plaintiff is entitled to an award of back pay from the date of her termination until the date of judgment."  Id. at 144.  See also Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 580 (2d Cir. 1989)('[a]n award of backpay is the rule, not the exception").  Thus , in our case herein, plaintiffs may be entitled to back pay awards from January 28, 2008, the date they would have began work at Liberty based on their December 2007 applications; and the July 29, 2011 date of the jury verdict; assuming that they reasonably mitigated damages.

The purpose of "front pay" is to also make the victim of unlawful discrimination whole. An award of front pay "serves a necessary role in making victims of

11

discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 729 (2d Cir. 1984). In deciding whether an award of front pay is appropriate, a court should consider (1) whether "reinstatement [is] either impossible or impracticable"; (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve "undue speculation." Id. An award of front pay cannot be unduly speculative. Dunlap-McCuller v. Riese Org., 980 F.2d 153, 159 (2d Cir. 1992), cert. denied, 510 U.S. 908 (1993); Chisholm v. Memorial Sloan-Kettering Cancer Center, 824 F.Supp.2d 573, 577 (S.D.N.Y. 2011)(award of front pay for two years found to be warranted); Hill v. Airborne Freight Corp., Nos. 97-CV-7098, 98-CV-6249, 2003 WL 366641, at *5 (E.D.N.Y. Feb. 20, 2003)(awarding front pay for approximately one year and collecting cases); Padilla v. Metro-North Commuter Railroad, 92 F.3d 117, 126 (2d Cir. 1996), cert. denied, 520 U.S. 1274 (1997)(awarding front pay for over 20 years); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1189 (2d Cir.), cert. denied, 506 U.S. 826 (1992)(awarding front pay for a 17 year period).

However, a prevailing plaintiff forfeits their right to back or front pay if they fail to mitigate damages by not using "reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982). Plaintiff's duty is "not onerous, and does not require [her] to be successful in mitigation." Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir. 1997)(internal quotations and citations omitted). Moreover, "the unemployed or underemployed claimant need not go into

another line of work, accept a demotion, or take a demeaning position." <u>Ford Motor Co.</u>, 458 U.S. at 231.

The defendant has the burden of proving "(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." <u>Hawkings v. 1115 Legal Serv. Care</u>, 163 F.3d 684, 695 (2d Cir. 1998).  However, an employer can be "released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment." <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 54 (2d Cir. 1998).

Plaintiffs and Liberty dispute whether or not an award of front pay is appropriate in this matter.  Liberty, *inter alia*, contends that front pay is inappropriate because it has not been demonstrated that plaintiffs have no reasonable prospect of obtaining comparable alternative employment because of the "unique and narrow work skills" involved citing <u>Whittlesey</u>, 742 F.2d at 729 and <u>Padilla</u>, 92 F.3d at 125.  Liberty further contends that an award of front pay would be speculative and unwarranted; and, in any event, should not be awarded for the number of years sought by plaintiffs.  Liberty also argues that any award of front pay must be based on the difference between Liberty wages and what plaintiffs could have earned at Royal.  Liberty also asserts that any award of front pay must be reduced to present value.  Plaintiffs contend that plaintiffs should be awarded front pay to their projected retirements at age 65.

As set forth above, front pay is awarded in the sound discretion of the district court. Awards of front pay are necessarily peculiar to the facts of each case and such awards

require a degree of prediction.  Meacham v. Knolls Atomic Power Laboratory, 185

F.Supp.2d 193, 219 (N.D.N.Y. 2002), aff'd, 381 F.2d 56 (2d Cir. 2004); judgment

vacated, 554 U.S. 84 (2008).  The Second Circuit has observed that "front pay awards

always involve some degree of speculation[.]" Tyler v. Bethlehem Steel Corp., 958 F.2d

1176, 1189 (2d Cir.), cert. denied, 506 U.S. 826 (1992).  Liberty contends that both

plaintiffs are not entitled to back pay or front because they failed to reasonably mitigate

damages after January 2008; the date they would have started work for Liberty if hired

based on their December 2007 applications.

1.  Plaintiff Chisolm Reasonably Mitigated Damages

Plaintiff Chisolm held down a part-time job at Royal Coach,  a company that did not

have full-time jobs for bus operators. (Tr. 431, 516).  Chisolm also worked during the

day as a cafeteria lunch cashier at a Yonkers public school.  (Tr. 440).  Since receiving

the letter from Liberty that she would not be hired dated January 30, 2008, Chisolm

sought comparable full-time work at New Jersey Transit, Connecticut Transit, and the

Metropolitan Transportation Agency ("MTA") (Tr. 487).  She is on a waiting list for a

conductor position at the MTA. (Tr. 487-88).  Chisolm also submitted other job

applications including an application for a position at a bus company that made trips to

Atlantic City and other areas.  (Tr. 488).

Simply stated, the record demonstrates that Chisolm made reasonable efforts to

mitigate her damages and is entitled to back pay.  The Court also exercises its

discretion to award reasonable front pay to Chisolm as the trial record shows that she

has not been able to obtain comparable full-time employment as a bus operator despite those efforts.  The argument by Liberty that front pay is not appropriate because the bus operator position is not a "unique and narrow work skill", citing <u>Padilla</u>, 92 F.3d at 126, is not determinative.  The Second Circuit stated that the plaintiff in <u>Padilla</u> was entitled to front pay because he "has no reasonable prospect of obtaining comparable alternative employment.." <u>Id</u>.  Front pay has been awarded for a wide variety of positions sought such as firefighters, probation officers, and administrative assistant.  <u>See</u> <u>Broadnax v. City of Haven</u>, 141 Fed. Appx. 16 at, *23 (2d Cir. 2005)(summary order);  <u>Lucas v. County of Nassau</u>, 344 Fed. Appx. 637 (2d Cir. 2009)(summary order); <u>Meacham v. Knolls Atomic Power Laboratory</u>, 185 F.Supp.2d at 233.

In any event, given the fact that Chisolm undertook reasonable efforts to find comparable employment, the burden was on Liberty to prove that  suitable work existed. Liberty did not meet that burden.

B.  <u>Plaintiff Sharrock Did Not Reasonably Mitigate Damages</u>

Plaintiff Sharrock has been driving a bus since 1994.  (Tr.152).  She has worked part-time at Royal Coach as a bus operator from 2005 to the time of trial.  (Tr. 214). Since working at Royal Coach, Sharrock testified at trial that she has not applied anywhere, other than Liberty Lines, to attempt to obtain a job.  (Tr. 22-23).  Sharrock had applied for a job at MTA "early on, way before I got to Royal Coach." (Tr. 223). Sharrock did seek out additional bus runs, week-end runs and charter runs at Royal Coach.  (Tr. 217, 223-24).  However, Royal Coach is a part-time school bus company.

(Tr. 516).

Thus, Sharrock has not made any effort at all to look for comparable employment after she received the rejection letter from Liberty in January, 2008, on her December, 2007 bus operator application.   (Tr. 195).   She only attempted to obtain additional part-time hours at Royal Coach.  This lack of reasonable mitigation efforts by Sharrock releases Liberty from the burden of proving comparable employment was available. Greenway, 143 F.3d at 54 ("...employer, under that rule, is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment");  Whittlesey, 742 F.2d at 728-29 ("an award of front pay in lieu of reinstatement does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing, because the duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available" (citation omitted)).

The Court concludes that Sharrock's failure to seek comparable full-time employment deprives her of any entitlement to front pay.  Moreover, an award of front pay to Sharrock under these facts would be unduly speculative.  However, the Court exercises its discretion to award  back pay to Sharrock for one (1) year, from January 2008 to December 31, 2008.  The Court concludes that back pay for one year is justified and appropriate to address the discriminatory conduct found by the jury herein.

C.  Back Pay Calculations for Plaintiff Chisolm

The Court concludes that Chisolm is entitled to back pay from January 28, 2008 to

the date of the verdict herein, July 29, 2011.  As such, the Court finds that the total amount of earnings that she would have made at Liberty would be $159, 973, an amount that both plaintiff and defendant agree to given the Court's conclusion that Chisolm would in fact be entitled to back-pay during said time period.  (Defts. Post-Trial Calculations In Supp. at 15; Pls. Post-Trial Calculations In Supp. at 18, n. 10).  The Court finds that Chisolm earned wages from January, 2008 to July 29, 2011 in the total amount of $101, 885. Said earnings amount is calculated as follows as set forth in Addendum #3 of Pls. Post-Trial Calculations In Supp.:

(a) $28,497 in 2008 (Ex. #28)

(b) $27,750 in 2009 approximate amount (Ex. 28)

(c) $28,838 in 2010 (Ex. 28)

(d) $16,800 in 2011 to July 29, 2011 approximate (Tr. 514, 8-25, Ex. Y)

Total Earned Wages $101,885

Subtracting the total earned wages from what plaintiff would have earned at Liberty during said time period, the Court hereby awards Chisolm the amount of $58,115 in back pay.

D.  Back Pay Calculations for Plaintiff Sharrock

The Court adopts the calculations of defendant that Sharrock would have earned the

amount of $36,986 if employed by Liberty from January 1, 2008 to December 31, 2008. (Defts. Post-Trial Calculations In Supp. at 12-14).  The parties agree that Sharrock earned wages in the amount of $26,722 at Royal Coach in 2008.    (id.; Pls. Post-Trial Calculations In Supp. at Addendum 4).  Subtracting the amount Sharrock earned at Royal Coach in 2008 from what she would have earned at Liberty if hired in 2008, results in a total back pay award of $10,264.

E. Front Pay Calculations for Plaintiff Chisolm

The Court agrees with Liberty that an award of front pay to Chisolm's projected date of retirement at age 65 would be unduly speculative and unjustified under the circumstances herein.  At the time of trial plaintiff Chisolm has been driving buses for approximately fourteen (14) years.  She has worked part-time at Royal Coach since 2004.  The record demonstrates that she is an experienced bus driver, but has been unable to obtain full-time bus operator employment comparable to that available at Liberty from January, 2008 to the date of trial.

However, the Court concludes that it would be unduly speculative to conclude that an experienced bus operator would be unable to obtain comparable employment for the next twenty- five (25) years.  Chisolm has applied for positions with the MTA, a large public transit agency in the local area.  She is currently on the MTA waiting list for a conductor position.  (Tr. 487-88).  She has also applied for positions with other large public transit authorities in states bordering New York  (Tr. 487).  Under the circumstances herein, the Court finds that a front pay award for five (5) years would be

18

a reasonable time period to compensate the plaintiff for future lost earnings.  The Court concludes that the trial evidence does not support awarding front pay for a longer time period.

The Court adopts the future wage calculations for Chisolm set forth in Addendum #7 to Pls. Post-Trial Calculations In Supp., but for a period of five years.  The Court finds that said calculations are fully supported by the record.  Given that the Court has found that Chisolm has reasonably mitigated her damages, the calculations are fairly based on what she earned at Royal Coach and not on a forty (40) hour work week  which has not been shown to be reasonably available.  As such, front pay is calculated as follows:

  1.  Anticipated Future Wages from July 29, 2011

   (a) Royal Coach from September 2011 to June, 2012

       $21.28 per hour x 4.5 hours a day x 210 guaranteed days =       $20,109.60

   (b) Yonkers School District from September, 2011 to June 2012 =  $ 7,250.00

       Total Approximate Future Earned Wages                       $27,359.60

  2.   Projected 2011 Basic Annual Income at Liberty At Vested Top Rate

       $28.64 per hour x 40 guaranteed hrs wk x 52 weeks           $59,571.20

  3.  Chisolm's Future Lost Wages for 2012                         $32,211.40

4. Chisolm's Future Lost Wages for 5 Years

5 years x $32,211.40                =                $161,057.00

II. <u>Pension Benefits for Plaintiff Chisolm</u>

Plaintiff Chisolm also seeks an award for lost pension benefits.  Lost pension benefits may be considered in arriving at a proper economic award under the anti-discrimination statutes, but any such award must be supported by evidence.  <u>Chisholm v. Memorial Sloan-Kettering Cancer Center</u>, 824 F.Supp.2d at 578;  <u>Vernon v. The Port Authority of New York and New Jersey</u>, No. 95 Civ. 4594, 2003 WL 1563219, at * 8 (S.D.N.Y. March 26, 2003).

Here, Chisolm seeks lost pension contribution that would have been made by Liberty if she had been hired from January, 2008 to July 29, 2011.  The Court adopts the lost pension benefit calculations set forth in Addendum #6-B to Pls. Post-Trial Calculations In Opp.  The Court finds that said calculations are fully supported by the trial evidence.  As such, the lost pension benefits are awarded to Chisolm as follows from January, 2008 to July 29, 2011:

Royal Coach - Employer Contributions Received

| Royal's Benefit Years | Chisolm's Contrib. (Ex. 28) | Employer's 10% Contrib. (Ex. Y) |
|---|---|---|
| 2008 | $1,175.00 | $117.50 |

| | | | |
|---|---|---|---|
| 2009 | | $1,050.00 | $105.00 |
| 2010 | | $ 197.67 | $ 19.77 |
| Total | = | $2,422,67 | $242.27 |

Liberty - Employer Contributions Lost:

| CBA[2] Benefit Years | # of Weeks | Liberty Contribs. (Ex. 20, 21) | Total |
|---|---|---|---|
| 4/01/2008 - 2/28/2009 | 48 | $135.00 x  48 | $6,480.00 |
| 3/01/2009 - 2/28/2010 | 52 | $150.00 x 52 | $7,800.00 |
| 3/01/2010 - 12/31/2010 | 7 | $160.00 x 7 | $1,120.00 |
| Total | = | | $15,400.00 |

Subtracting the Royal Coach 10% contribution results in a net total pension for Chisolm of $15,157.63.

III.  Present Value

The award of front pay to Chisolm must be reduced to present value.  McCrann v. U.S. Lines, Inc., 803 F.2d 771, 772 (2d Cir. 1986).  Liberty may submit to the Court evidence as to the proper discount rate and calculations to the date of this Decision and Order within 15 days.  Plaintiffs may then respond within 15 days.

_____

[2]Collective Bargaining Agreement at Liberty.

21

IV.  Pre-Judgment Interest

Plaintiffs seek pre-judgment interest on their back pay awards.  The Second Circuit has stated that in a suit to enforce a federal right, "it is an abuse of discretion not to include pre-judgment interest."  Gierlinger v. Gleason, 160 F.3d 858, 874 (2d Cir. 1998).

Accordingly, plaintiffs shall submit to the Court a calculation of interest to be awarded on their back pay awards to the date of this Decision and Order within 15 days.  Liberty may then respond within 15 days.

## CONCLUSION

For the foregoing reasons, the motions by Liberty for judgment as a matter of law or a new trial are denied.  The Clerk of the Court is respectfully requested to terminate the pending motion (Docket #48).  The parties are to provide submissions to the Court as set forth above.

SO ORDERED:

Dated: February   6   2013

White Plains, New York

GEORGE A. YANTHIS, U.S.M.J.